GRIFFIS, J.,
for the Court.
¶ 1. Robert E. Curtis was employed as a vocational training instructor at Juvenile Rehabilitation in Brookhaven. He tested positive for marijuana during a random drug test and was terminated from his position. His claim for unemployment benefits was denied on the grounds that he was discharged for misconduct. Curtis appealed this decision. The appeals referee, the board of review, and the circuit court affirmed the denial of benefits. Finding sufficient evidence in the record to support the Commission’s findings, we affirm.
STANDARD OF REVIEW
¶ 2. Mississippi Code Annotated Section 71-5-531 (Rev.2000) provides the appropriate standard of review when reviewing a board of review’s decision regarding employee benefits. This statute reads “[i]n any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.” Id. The Mississippi Supreme Court explained this standard of review in Allen v. Mississippi Employment Security Commission, 639 So.2d 904, 906 (Miss.1994) when it stated:
This Court’s standard of review of an administrative agency’s findings and decisions is well established. An agency’s conclusions must remain undisturbed unless the agency’s order 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one’s constitutional rights, (citations omitted). A rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise, (citation omitted). Lastly, this Court *1095 must not reweigh the facts of the case or insert its judgment for that of the agency. (citation omitted).
ANALYSIS

I. Whether there ivas substantial evidence to conclude that Curtis committed disqualifying misconduct.

¶ 3. Mississippi Code Annotated Section 71-5-513(A)(l)(b) (Rev.2000) establishes that an individual shall be disqualified for acts of misconduct connected with his work. Section 71-7-13(3) (Rev.2000) provides that “[a]n employee discharged on the basis of a confirmed positive drug and alcohol test in accordance with this chapter shall be considered to have been discharged for willful misconduct.”
¶ 4. The evidence and testimony contained in the record clearly shows that Curtis tested positive for marijuana on the random drug test administered to him on February 14, 2003. Randy Boyd, the Director of Residential Living at Juvenile Rehabilitation, testified at the hearing before the appeals referee that Curtis tested positive. A copy of Curtis’ drug test results showing that he tested positive is also contained in the record.
¶ 5. Nonetheless, Curtis suggests that he was “set up” and that proper testing procedures were not followed. Curtis complains that he was the only person tested from his shift that day. He asserts that he was administered two tests within fifteen minutes and that he feels his urine was switched.
¶ 6. The record contradicts such claims. Nothing in the record suggests that Curtis was singled out or treated differently from any other employees. In fact, the record indicates that several other employees were also tested on the same day. The testimony and record establish that Curtis was not administered two tests as he claimed, but that he was merely asked to submit a new urine sample because the first sample had fallen below the temperature required for proper testing. Nothing in the record supports Curtis’ claim that he was “set up” or that his urine was switched.
¶ 7. In addition, Curtis alleges post-testing procedural flaws. Curtis argues that his request for a hair test was improperly denied. He asserts that a subsequent drug test that he got the facility doctor to perform was negative. Under Juvenile Rehabilitation’s employment policy, a confirmed drug test shall result in termination. Nothing in the policy provides for a hair test or a second drug test. Moreover, the subsequent drug test was administered on April 4, 2003, nearly two months after Curtis tested positive for marijuana.
¶ 8. Curtis cites Southwood Door Co. v. Burton, 847 So.2d 833 (Miss.2003) as authority that he should have been awarded unemployment benefits. However, South-wood is distinguishable and inapplicable to our facts.
¶ 9. In Southwood, a truck driver was terminated from employment for testing positive on a random drug test. The court held that “if an employer wishes to disqualify an employee for unemployment benefits because of a positive result on a federally-regulated drug test, the employer must at least produce clear and convincing evidence that the testing comported fully with the federal regulations.” Id. at 842. The court found that the driver was not informed of his right to request within 72 hours the testing of his urine specimen. Id. Based on this finding, the court affirmed the circuit court’s decision to award the driver benefits. Id.
¶ 10. Although, as Curtis notes, the driver in Southwood did have subsequent drug tests taken that yielded negative re- *1096 suits, this was not the basis for the court’s decision to award benefits. The court based its decision on the fact that the federal ■ procedures were not followed in the administration of the drug test. Unlike Southwood, federal drug testing procedures are inapplicable here. Southwood is not authority, as Curtis claims, for the proposition that a negative subsequent drug test requires the awarding of benefits.
¶ 11. Applying the standard of review as stated in Allen, we find the record contained sufficient evidence to support the conclusion that Curtis’ actions constituted disqualifying misconduct. Therefore, we affirm the decisions below.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY IS AFFIRMED.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.